UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY LAMAR HUDSON

      Applicant,

v.                                    CASE NO. 8:15-cv-1912-T-23JSS

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

Terry Lamar Hudson applies for the writ of habeas corpus under 28 U.S.C.

§ 2254 (Doc. 1) and challenges the validity of his state convictions for possessing

cocaine within 1,000 feet of a park with intent to sell, possessing drug paraphernalia,

and resisting officers without violence, for which convictions Hudson serves ten

years imprisonment. Numerous exhibits ("Respondent's Exhibit __") support the

response. (Doc. 8) The respondent admits the application's timeliness. (Doc. 8, p. 6

n.2)

## FACTS[1]

The police received an anonymous tip that Hudson was selling illegal drugs at

a location in a high crime area known for drug activity. Detective James Ring and

---

[1] This factual summary derives from Hudson's brief on direct appeal and the record.
(Respondent's Exhibits 1, 1a, 1b, and 2)

Detective Jasper Yzaguirre, both undercover and in an unmarked police vehicle, went to that location and observed Hudson standing in an intersection and obstructing traffic. The detectives saw Hudson flag down a passing vehicle and engage in a hand-to-hand exchange with an occupant of the vehicle. Next, the detectives saw Hudson engage in a hand-to-hand exchange with a passing pedestrian. Detective Ring called in canine officer Jose Bosque. When Officer Bosque approached Hudson, Hudson fled. Detective Ring and Detective Yzaguirre pursued Hudson. Detective Ring saw Hudson remove an object from his waistband and throw it. Detective Ring subdued Hudson. Officer Bosque recovered from where Hudson threw the object a clear plastic bag containing ten small bags of powder cocaine.

Hudson was arrested and charged with possessing cocaine with intent to sell within 1000 feet of a park, possessing drug paraphernalia, and resisting officers without violence. A jury convicted Hudson of the three offenses, and the judge sentenced Hudson to ten years' imprisonment for possessing cocaine and to "time served" on each of the other two convictions.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of
> a federal habeas court to grant a state prisoner's application for
> a writ of habeas corpus with respect to claims adjudicated on
> the merits in state court. Under § 2254(d)(1), the writ may issue
> only if one of the following two conditions is satisfied — the
> state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined
> by the Supreme Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal law,
> as determined by the Supreme Court of the United States." Under
> the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if
> the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in

order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Sellers*, 138 S. Ct. at 1192. "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Sellers*, 138 S. Ct. at 1192.

- 5 -

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Hudson's convictions and sentences. (Respondent's Exhibit 4) In another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Hudson's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 10) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of,

> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record
> in existence at that same time, i.e., the record before the state
> court.

Hudson bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Hudson's post-conviction claims warrants deference in this case. (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief)

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Hudson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of

counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*, first, the
> defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its

two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment."  *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness

claim must judge the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690.

*Strickland* requires that "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Hudson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Hudson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Hudson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v.*

*United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial

lawyers, in every case, could have done something more or something different. So,

omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's

investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210,

1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to
> investigate particular facts or a certain line of defense."
> *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make
> reasonable investigations or make a reasonable decision that
> makes particular investigations unnecessary." *Strickland*,
> 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added).
> "[C]ounsel need not always investigate before pursuing
> or not pursuing a line of defense. Investigation (even a
> nonexhaustive, preliminary investigation) is not required for
> counsel reasonably to decline to investigate a line of defense
> thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the
> reasonableness of an attorney's investigation . . . a court must
> consider not only the quantum of evidence already known to
> counsel, but also whether the known evidence would lead a
> reasonable attorney to investigate further." *Wiggins*, 539 U.S.
> at 527, 123 S.Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty

to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Hudson must prove that the state court's decision

was "(1) . . . contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

In denying Hudson's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief, p. 2) Because the state court rejected the claims based on *Strickland*, Hudson cannot meet the "contrary to" test in Section 2254(d)(1). Hudson instead must show that the state court unreasonably applied *Strickland* or

unreasonably determined the facts. In determining "reasonableness," a federal

application for the writ of habeas corpus authorizes determining only "whether

the state habeas court was objectively reasonable in its *Strickland* inquiry," not an

independent assessment of whether counsel's actions were reasonable. *Putnam v.*

*Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).

The presumption of correctness and the highly deferential standard of review requires

that the analysis of each claim begin with the state court's analysis.

**Ground One**

Hudson contends that the trial court erred by denying his motion for judgment

of acquittal on the cocaine possession charge. Hudson alleges that the state failed to

prove that he (1) actually or constructively possessed cocaine or paraphernalia or

(2) intended to sell cocaine. The respondent opposes this ground as unexhausted

and procedurally defaulted because Hudson argued on direct appeal only a violation

under state law. In his reply Hudson does not challenge the respondent's assertion

of default.

An applicant must present each claim to a state court before raising the claim

in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly

presen[t]' federal claims to the state courts in order to give the State the 'opportunity

to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v.*

*Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord*

*Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion

rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Also, an applicant must present to the federal court the same claim presented to the state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. at 366.

As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, an applicant must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

When Hudson presented this ground to the state court in his appellate brief he cited only state cases and did not assert a violation of a federal constitutional right. (Respondent's Exhibit 2, pp. 13–16) Hudson neither cited a federal case or a federal constitutional provision, nor labeled the claim "federal." Consequently, Hudson did not "fairly present" this ground to the state court. *See Baldwin*, 541 U.S. at 27; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("In other words, 'to exhaust state remedies fully the [applicant] must make the state court aware that the claims asserted present federal constitutional issues.'") (quoting *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007)); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (finding that *Baldwin* and *Lucas* "stand for the proposition that an applicant with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim").

Hudson's failure to present to the state court a federal claim challenging the denial of his motion for judgment of acquittal deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. *See also Harless*, 459 U.S. at 6 ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made.") (internal citation omitted); *Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the

evidence,' cannot constitute fairly presenting a federal claim to the state courts"). Consequently, Hudson's claim is unexhausted. State procedural rules preclude Hudson from returning to state court to present his federal claim in a second direct appeal. Hudson's failure to properly exhaust his federal claim in the state court results in a procedural default.

"If the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, an applicant must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986). A fundamental miscarriage of justice

occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, Hudson must show constitutional error coupled with "new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Hudson fails to demonstrate cause for the default of his claim challenging the denial of his motion for judgment of acquittal because he fails to show that some "external factor" prevented him from raising the federal claim on direct appeal. *Wright*, 169 F.3d at 703. Hudson likewise fails to establish prejudice because he does not show that the alleged error infected the entire trial with constitutional error. *Frady*, 456 U.S. at 170. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Hudson satisfies neither exception to procedural default, ground one is procedurally barred from federal review.

**Ground Seven**

Hudson contends that his trial counsel rendered ineffective assistance by not "adequately" moving for a judgment of acquittal. Hudson claims that his counsel "failed to articulate the necessary facts to insure [a] motion for JOA, that [Hudson] never had active or constructive possession of [the] drugs found and there was no

DNA evidence to link [him] to the charges[,] causing the conviction to be based on circumstantial evidence." (Doc. 1, p. 14)  When Hudson raised this ground in the state post-conviction court, he asserted a different factual basis for counsel's alleged ineffective assistance in moving for a judgment of acquittal; he argued that his trial counsel erred by orally moving for a judgment of acquittal at the trial instead of filing a written motion for judgment of acquittal.  (Respondent's Exhibit 6, amended Rule 3.850 motion, pp. 23–24)  To the extent that he asserts in the federal application the same ground he presented in his amended Rule 3.850 motion, Hudson cannot obtain relief.

The state post-conviction court summarily denied this ground as follows (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief, p. 5):

> [T]he Defendant claims trial counsel was ineffective for making an inadequate motion for a judgment of acquittal. The Defendant appears to take issue with the form of the motion, as it was made *ore tenus* following the conclusion of the State's case. The Defendant alleges a written motion would have led to a different result and the Motion would have been granted. The Defendant does not describe any legal argument which should have been made or that which was made inadequately. The mere fact that [counsel made] an *ore tenus* motion for judgment of acquittal . . . does not show any deficiency or prejudice. [This] [g]round . . . is DENIED.

Hudson presents no evidence or legal authority supporting his contention that a written motion for judgment of acquittal rather than an oral motion would have resulted in a different ruling on the motion.  Consequently, Hudson fails to meet his

burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting his allegation of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

To the extent that he presents in the federal application a different factual basis for this ground of ineffective assistance of counsel — that trial counsel should have moved for a judgment of acquittal based on a lack of either DNA evidence or evidence of possession — Hudson cannot obtain relief. Although an applicant is not required to present a verbatim restatement of a claim brought in state court, an applicant may not present a particular factual instance of ineffective assistance of counsel in his federal application that was not first presented to the state court. *See McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'") (quoting *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("When a petitioner raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts for the same claim in his federal habeas proceeding, he has failed to fairly present the federal claim to the state court."). *See also Harless*, 459 U.S. at 6 ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (citations

omitted).  Accordingly, Hudson's failure to present to the state court the particular factual basis for the claim of ineffective assistance of counsel that he raises in the federal application leaves the claim unexhausted.  Hudson cannot return to state court to file an untimely, successive motion under Florida Rule of Criminal Procedure 3.850.  *See* Fla. R. Crim. P. 3.850(b), (h).  Consequently, the claim is procedurally defaulted.

Hudson fails to demonstrate cause for the default of his claim challenging the denial of his motion for judgment of acquittal because he fails to show that some "external factor" prevented him from raising the federal claim on direct appeal. *Wright*, 169 F.3d at 703.  Hudson likewise fails to establish prejudice because he does not show that the alleged error infected the entire trial with constitutional error. *Frady*, 456 U.S. at 170.  He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327.  Because Hudson satisfies neither the cause and prejudice exception nor the fundamental miscarriage of justice exception to procedural default, his claim of ineffective assistance of counsel is procedurally barred from federal review.

**Ground Two**

Hudson contends that his trial counsel rendered ineffective assistance by not calling as witnesses at trial Beatrice Hudson, Tameka Alexander, and Eric Hogan. Hudson alleges that each witness was available to testify at trial and would have

supported his defense. Hudson fails to describe in his application what testimony each witness would have offered at trial. To the extent that he asserts in the federal application the same ground and supporting facts presented to the state post-conviction court in his amended Rule 3.850, Hudson cannot obtain relief.

The state post-conviction court summarily denied this ground as follows (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief, pp. 2–3):

> [T]he Defendant claims trial counsel failed to call three witnesses available and willing to testify, the substance of which would have cast doubt on the State's case, leading to a different result. These witnesses include Beatrice Hudson, the Defendant's mother; Tameka Alexander, the mother of one of the Defendant's sixteen children; and Eric Hogan, a close friend of the Defendant.
>
> Beatrice Hudson: Defendant alleges that his mother would testify she was one of the individuals the police thought the Defendant was engaged in a drug transaction with. The Defendant claims his mother would testify the Defendant handed her diapers and not drugs.[2]
>
> The police observed the Defendant walk up to a vehicle, lean in the window, and engage in a hand-to-hand exchange. Shortly after, the detectives observed the Defendant engage in a similar transaction with a female pedestrian. The Defendant was in a high-crime area known for the sale of narcotics and the officers had received an anonymous tip that the Defendant, given his location and description, was selling drugs and armed with a handgun. The undercover detectives that observed this called for a marked vehicle to approach the Defendant. The uniformed

---

[2] Hudson testified at trial that his mother was in the car that the detectives saw him stop on the street and make a hand-to-hand exchange. Hudson testified that what he handed to his mother were diapers for his child, not drugs. (Respondent's Exhibit 1b, pp. 345–47) Hudson's mother was in the courtroom at the trial when Hudson testified. (Respondent's Exhibit 1b, p. 357) Hudson does not allege that his mother was willing to testify on his behalf.

officer in the marked vehicle that responded identified himself as law enforcement and the Defendant immediately fled, ignoring the officer's instructions for him to stop.

The crux of the testimony from the Defendant's mother appears to be towards that claim that the undercover officers that observed the hand-to-hand transaction with the vehicle were incorrect. The proposed testimony, however, does nothing to undermine the fact that the officers still had a reasonable suspicion the Defendant had engaged in a hand-to-hand drug transaction. The fact that the officers may have ultimately been incorrect on this one transaction does not undermine the Defendant's conviction. Defendant's claim as to this witness is DENIED.

<u>Tameka Alexanader</u>: Defendant next alleges the mother of his child would have testified that she made a false police report and that the anonymous tip that the Defendant was selling drugs at that moment came from her and was knowingly false. Notwithstanding the claim that this witness would subject herself to possible criminal proceedings for knowingly making a false police report had this witness testified as the Defendant claims, it would not have changed the outcome of the proceedings. The officers at the time they observed the Defendant would have had no way of knowing whether the tip was falsely made. They conducted their own observations and had independent evidence of what they believed to be criminal activity. Defendant's claim as to this witness is DENIED.

<u>Eric Hogan</u>: Defendant claims his close friend would testify that he was present and with the Defendant. The Defendant claims Mr. Hogan was available to testify that the Defendant did not throw any drugs as he ran away from the police. However, the testimony offered by the officers at trial is in direct contradiction with this. Detective Yzaguirre testified that he observed Mr. Hogan and Mr. Hogan was not with the Defendant the entire time. Detective Yzaguirre and Officer Ring both observed the Defendant make the throwing motion. At the time the Defendant was apprehended by Officer Ring, the Defendant was alone. The overwhelming evidence as presented at trial is against the veracity of the purported testimony. Therefore, this Defendant's claim as to this witness, and [this ground] in its entirety, is DENIED.

"Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted).[3] Hudson presents no evidence demonstrating that any of the three witnesses was willing to testify on his behalf or that any of the witnesses would have testified as he hypothesizes. *See e.g., Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the [applicant] must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (holding that failure to interview witnesses could not constitute ineffective assistance without a showing that the investigation would have helped the defendant). Hudson's speculative and unsupported contention that his trial counsel should have

---

[3] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

called these witnesses to testify at trial, without more, is insufficient to warrant relief. "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the [applicant]'s burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009). *See also Hill v. Lockhart*, 474 U.S. 52 (1985) (finding that conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (finding that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Because he fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts in denying his ground of ineffective assistance of counsel, Hudson is not entitled to federal habeas relief on ground two. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Three**

Hudson contends that his trial counsel rendered ineffective assistance by not moving to suppress his allegedly unlawful stop by the police "because the only evidence was the testimony of officers (J. Yzaguirre #193) and (J. Ring #158) who were basing the[ir] arrest on the tip of the anonymous tipster." (Doc. 1, p. 8) To the extent that he relies on the allegations presented in his amended Rule 3.850 motion to support this ground, Hudson asserts that his rights under the Fourth and Fourteenth Amendments were violated when the police, "without any substantiated facts or evidence, ordered the Defendant to be stopped and detained based on a hunch and anonymous tip that Defendant was armed and selling drugs, which was based on

unsubstantiated information received from an anonymous citizen." (Respondent's Exhibit 6, amended Rule 3.850 motion, p. 12)

The state post-conviction court summarily denied this ground in Hudson's amended Rule 3.850 motion (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief, p. 4):

> [T]he Defendant alleges trial counsel was ineffective for failing to file a pre-trial motion to suppress. The Defendant claims he was unlawfully stopped based solely on an anonymous tip. The Defendant's claim, however, fails to mention the personal observations attested to by the officers at trial that the Defendant engaged in a hand-to-hand transaction with a vehicle and a subsequent hand-to-hand transaction with a pedestrian. The Defendant was in a high crime area known as a drug area (a fact readily admitted by the Defendant himself). When a uniformed officer approached the Defendant and identified himself, the Defendant immediately fled. The officers did not approach the Defendant solely on the information from the anonymous tip. The Defendant's claim that there was therefore no reasonable basis to approach him is incorrect. As Defendant would not have prevailed on such a motion, trial counsel was not ineffective and [this ground] is DENIED.

"To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a[n applicant] must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Hudson establishes none of these requirements.

The Fourth Amendment protects an individual from an unreasonable search or seizure. U.S. Const. amend IV. An officer "may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). An anonymous tip can, under certain circumstances, give rise to reasonable suspicion, as long as the information provided contains "sufficient indicia of reliability to justify the investigatory stop." *Wardlow*, 528 U.S. at 123. *Navarette v. Ca.*, 572 U.S. 393, 398 (2014), explains:

> Of course, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *White*, 496 U.S., at 329, 110 S. Ct. 2412 (emphasis added). That is because "ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations," and an anonymous tipster's veracity is "by hypothesis largely unknown, and unknowable." *Ibid*. But under appropriate circumstances, an anonymous tip can demonstrate "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." *Id.*, at 327, 110 S. Ct. 2412.

"[A] suspect's *adverse* reaction to police may independently *corroborate* information provided by an anonymous informant." *United States v. Heard*, 367 F.3d 1275, 1280 (11th Cir.) (emphasis in original), *cert. denied*, 543 U.S. 913 (2004). *See also United States v. Fields*, 178 F. App'x 890, 892 (11th Cir. 2006) (*per curiam*) (finding that the defendant's presence "at a house known by officers in the area for high drug activity,

a short distance from the intersection described by the informant, and [his] evasive behavior . . . are sufficient for a finding of reasonable suspicion").[4]

Hudson fails to show that if his trial counsel had filed a motion to suppress, a reasonable probability exists that the judge would have granted the motion. As the police report indicates, the detectives received from an anonymous source information that Hudson was selling illegal drugs at a particular location.[5] (Respondent's Exhibit 1, p. 6) The tipster provided the police with a physical description of Hudson and the clothing he was wearing.[6] Even if the anonymous tip alone might have been insufficient to establish reasonable suspicion, the totality of the circumstances — (1) the anonymous tip, (2) the detectives' observation of Hudson conducting two hand-to-hand transactions in a high crime area known for drug activity, and (3) Hudson's evasive behavior when approached by Officer Bosque — is sufficient to establish reasonable suspicion. *See, e.g., Ala. v. White*, 496 U.S. 325, 332 (1990) (holding that an anonymous tip corroborated by independent police work exhibited sufficient indicia of reliability to provide reasonable suspicion to initiate an investigatory stop); *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (finding reliable an anonymous tip corroborated

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

[5] The anonymous tipster also told the police that Hudson was armed with a handgun. (Respondent's Exhibit 2, p. 6)

[6] The anonymous tipster described Hudson as "a large black male last seen wearing red shorts and a grey t-shirt . . . ." (Respondent's Exhibit 1, p. 6)

by the officers' independent investigation).  Given these facts, trial counsel had no basis to move for suppression.

Hudson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by denying his ground of ineffective assistance of counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Grounds Four and Five**

In ground four Hudson contends that his trial counsel rendered ineffective assistance by not moving to dismiss the information.  Hudson argues that the trial court "lacked jurisdiction to charge [him] under false pretense [and a] perjured charging information."  (Doc. 1, p. 9)  Hudson alleges that "an investigating officer on his own doesn't qualify as a material witness unless the officer is the victim" and that "[t]he anonymous tipster's information was never really verified" to support the officers' testimony . . . because in spite of [the] drugs, a gun was never found on [Hudson.]"  (Doc 1, p. 9)  In ground five Hudson contends that his trial counsel rendered ineffective assistance by not objecting "to the introduction of the drugs and paraphernalia and argue that there was no DNA evidence to connect [him] to the items found in the high crime area and circumstantial evidence that was used would have support[ed] [a] motion to suppress or dismiss."  (Doc. 1, p. 12)

The state post-conviction court summarily denied both grounds in Hudson's amended Rule 3.850 motion (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief, pp. 3–4):

[T]he Defendant claims that trial counsel failed to file a pre-trial motion to dismiss based on a "perjured charging information." The Defendant makes the claim that the arresting officers were not material witnesses, and therefore, could not have provided a sworn affidavit. Defendant appears to allege that only an information based on the affidavit of the anonymous tipster would provide an adequate charging document.

Defendant's claim is completely without merit. The arresting officers, having made personal observations — and having testified to those during his jury trial — were material witnesses. Following the Defendant's logic, any information which is not based on an affidavit from a victim or other citizen should be dismissed. If this were the case then any crime where the victim did not survive, and/or one where there is no first-hand witness, could never be charged as a crime. Such a ridiculous result is not an accurate representation of the law, and therefore trial counsel could not have been ineffective for failing to file a frivolous motion. [This] [g]round . . . is DENIED.

. . . .

[T]he Defendant claims trial counsel was ineffective for failing to file a pretrial motion to dismiss or to object to the introduction of the drugs based on a factual dispute that he was not in possession of the drugs. The purpose of a motion to dismiss in a criminal case is to test the legal sufficiency and determine whether there is a dispute of material fact. *See Dixon v. State*, 112 So. 3d 721 (Fla. 2d DCA 2013). Whether the Defendant was in possession of the drugs was a material fact in dispute.[7] Upon a motion to dismiss, this dispute would have been resolved in favor of the State, and the motion would not have succeeded.

Furthermore, the police officers involved testified they observed the Defendant remove an object from his waistband, and throw it. A subsequent search of the area near where the Defendant

---

[7] Florida Rule of Criminal Procedure 3.190(c)(4) allows a defendant to move to dismiss when "[t]here are no material disputed facts and the undisputed facts do not establish a *prima facie* case of guilt against the defendant." If the State charges a defendant based on circumstantial evidence, whether that evidence excludes all reasonable hypotheses of innocence can be decided only after the presentation of evidence at a trial. *See State v. Burrell*, 819 So.2d 181, 182 (Fla. 2d DCA 2002).

threw the object led to the discovery of the drugs. The eyewitness testimony from the officers linked the Defendant to the drugs. Trial counsel was not ineffective for failing to file a frivolous motion, or failing to object without a legal basis to the introduction of this evidence. [This] [g]round . . . is DENIED.

**Motion to dismiss**

To succeed on his ground of ineffective assistance of counsel for not moving to dismiss the information, Hudson must show a reasonable probability that the trial court would have granted the motion. The state post-conviction court determined that no basis existed under state law to dismiss the information. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (explaining that "[s]tate courts are the ultimate expositors of state law," and federal courts must abide by their rulings on matters of state law) (citations and footnote omitted). "Although an ineffective assistance of counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law.'" *Will v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 908 (11th Cir. 2008) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). *See also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [the applicant's counsel] done what [the applicant] argues he should have done . . . .

It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [the applicant's counsel] objected to the introduction of [the applicant's] statements based on [state law] — the objection would have been overruled . . . . Therefore, [the applicant's counsel] was not ineffective for failing to make that objection.").

Hudson presents no evidence showing that the trial court "lacked jurisdiction to charge [him] under false pretense [and a] perjured charging information." (Doc. 1, p. 9) Also, Hudson fails to show that, because a dispute of material fact existed on whether he possessed the drugs and paraphernalia, he would have succeeded on a motion to dismiss.

**Motion to suppress**

In the order denying Hudson's amended Rule 3.850 motion the state post-conviction court did not address Hudson's contention that trial counsel rendered ineffective assistance by not moving to suppress the drugs. (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief, p. 4) Consequently, the claim requires *de novo* review because "the present controversy falls outside of [Section] 2254(d)(1)'s requirement that [the federal court] defer to state court decisions that are not contrary to, or an unreasonable application

of, clearly established federal law." *Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003) (citation omitted). *See also Cone v. Bell*, 566 U.S. 449, 472 (2009) (explaining that "[i]f the state court did not reach the merits of a petitioner's claim based on some ground that is not adequate to bar federal review, we must review the claim *de novo*."); *Williams v. Ala.*, 791 F.3d 1267, 1273 (11th Cir. 2015) (noting that "[u]nder § 2254(d), AEDPA's deferential standard of review is limited to claims that have been 'adjudicated on the merits' in state court.").

To the extent that he relies on the allegations in his amended Rule 3.850 to support his federal application, Hudson shows no entitlement to relief. Hudson alleged in the state post-conviction court that his trial counsel should have moved to suppress the drugs and paraphernalia because "counsel knew or should have known that a Motion to Suppress the Evidence . . . would have challenged the State's evidence against the Defendant and there is a reasonable probability this Honorable Court would have granted such motion and suppressed the State's evidence in this case prompting a [d]ismissal of the charges in this case." (Respondent's Exhibit 6, amended Rule 3.850 motion, p. 18) Hudson fails to assert a viable basis on which the trial court could have suppressed the evidence. *See e.g., State v. Williams*, 538 So.2d 1346, 1348 (Fla. 4th DCA 1989) (finding that actual or constructive possession of contraband did not qualify as a ground suitable for a pre-trial suppression motion because the question of possession is an issue that is addressed at trial and challenged in a motion for judgment of acquittal). Hudson fails to meet his burden of proving

that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting grounds four and five.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Six**

Hudson contends that his trial counsel rendered ineffective assistance by not objecting to Detective Ring's allegedly improper opinion testimony about both the quantity of drugs and Hudson's intent to sell the cocaine.  Hudson argues that "[t]he packing of cocaine was the only thing used to support the intent to sell cocaine and [the] officer's testimony about drug quantities being consistent with that of street level sales should have been objected to because it could only support the charge of possession and not intent to sell."  (Doc. 1, p. 13)

The state post-conviction court summarily denied this ground in Hudson's amended Rule 3.850 motion (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief, p. 5):

> [T]he Defendant claims trial counsel was ineffective for failing to object and move for a mistrial based on the officer's testimony regarding the quantity of drugs, and the Defendant's intent to sell. The Defendant cites to *Lewis v. State*, 154 So. 2d 897 (Fla. 1st DCA 2000) to support his claim. In *Lewis*, the arresting officer did not observe the Defendant trying to sell or deliver drugs, and  there was nothing to indicate the manner in which the drugs were packaged suggested they were intended for sale or delivery rather than personal use. This case is distinguished from *Lewis*. The officers' testimony as to the intent was not based solely on the quantity. The officers here observed what they described as two exchanges, typical to hand-to-hand drug transactions, and the packaging of the drugs indicated to the officers they were associated with the sale of drugs and not just for personal use. As the record refutes Defendant's claim, trial counsel was not ineffective for failing to object and move

> for a mistrial without any legal basis. Therefore, [this]
> [g]round . . . is DENIED.

The record refutes Hudson's contention that "[t]he packaging of the cocaine was the only thing used to support the intent to sell cocaine . . . ." After receiving an anonymous tip, Detective Yzaguirre and Detective Ring went to the location where the anonymous tipster indicated Hudson could be found. Both detectives testified at trial that they observed Hudson engage in two separate hand-to-hand transactions in a high crime area. Detective Ring testified at trial about the weight and street value of the drug in each of the ten small bags. (Respondent's Exhibit 1a, transcript of May 9, 2012, jury trial, pp. 157–58) Also, Detective Ring testified that he had on previous separate occasions seen cocaine packaged in a similar manner and that, based on his training and experience, the packing was indicative of "street-level drugs sales." (Respondent's Exhibit 1a, transcript of May 9, 2012, jury trial p. 158)

Hudson presents no legal basis on which counsel could have either objected to Detective Ring's testimony or moved for a mistrial. Hudson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Eight**

Hudson contends that his trial counsel rendered ineffective assistance by not objecting to the following allegedly improper cross-examination by the prosecutor about his prior convictions (Respondent's Exhibit 1b, pp. 360–61):

> Q: Okay. Now, you've been convicted of felonies; correct?
>
> A: Correct.
>
> Q: Five?
>
> A: Five.
>
> Q: Three crimes involving falsehood — falsehood and dishonesty?
>
> A: Yes.

Hudson alleges that this questioning "prejudice[d] [his] truthfulness in the eyes of the jury." (Doc. 1, p. 15) Hudson argues that his trial counsel should have moved for a judgment of acquittal based on this allegedly improper questioning.

The state post-conviction court summarily denied this ground in Hudson's amended Rule 3.850 motion (Respondent's Exhibit 6, Final Order Summarily Denying Defendant's Amended Motion for Post-Conviction Relief, pp. 5–6):

> [T]he Defendant claims trial counsel was ineffective for failing to object when the prosecutor questioned him regarding his prior felony convictions. The Defendant claims such questioning was improper. The Defendant is wrong. *See* Fla. Stat. § 90.610; *see also Livingston v. State*, 682 So. 2d 591 (Fla 2d DCA 1996) ("the prosecutor may ask the defendant if he has committed any felonies or crimes involving dishonesty or a false statement.") As there was no basis to object, trial counsel was not ineffective . . . .

- 34 -

Florida law allows a prosecutor to question a witness about the number of his prior convictions for felony offenses or offenses involving dishonesty or a false statement. § 90.610(1), Fla. Stat. The prosecutor's questioning of Hudson complied with state law. Hudson presents no basis on which his trial counsel could have objected to this line of questioning. Consequently, Hudson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Hudson's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Hudson and close this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Hudson is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Hudson must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would

debate either the merits of the claims or the procedural issues, Hudson is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Hudson must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on April 16, 2019.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE